# EXHIBIT 3

1

```
         IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF WYOMING


WILLIAM JEROME RUTH, individually,
and as Wrongful Death Representative
of the ESTATE OF CYNTHIA SHOOK RUTH,

       Plaintiff,

v.

BEARTOOTH ELECTRIC COOPERATIVE, INC.,
a Montana Corporation, and ASPLUNDH
TREE EXPERT, LLC, a Limited Liability
Company formed in Pennsylvania,

       Defendants.




              DEPOSITION OF PAM NELSON
                   March 13, 2023
                     8:00 a.m.


PURSUANT TO THE UNITED STATES RULES OF FEDERAL
PROCEDURE, this Deposition was:

TAKEN BY:      Kenneth E. Barker, Esq.
               Attorney for Plaintiff

REPORTED BY:   Barbara Jean Morgenweck, RPR, CCR
               NCRA, RPR
               New Mexico CCR #526
```

```
                                                                    2
1    APPEARANCES:

2

3    On behalf of the Plaintiff:

4
     Kenneth E. Barker
5    BARKER LAW FIRM, LLC
     10956 SD Highway 34
6    Belle Fourche, South Dakota 57717
     605-723-8000
7    Kbarker@barkerlawfirm.com

8    Robert Pahlke
     THE ROBERT PAHLKE LAW GROUP
9    2425 Circle Drive, Suite 200
     Scottsbluff, NE 69361
10   308-633-4444
     Rgp@pahlkelawgroup.com
11

12   On behalf of Defendant Beartooth Electric
     Cooperative, Inc.:
13

14   Henry F. Bailey, Jr.
     Andrew D. Bailey
15   BAILEY STOCK HARMON COTTAM LOPEZ, LLP
     6234 Yellowstone Road
16   Cheyenne, Wyoming 82003
     Hank@performance-law.com
17   Andy@performance-law.com

18   On behalf of Defendant Asplundh Tree Expert, LLC:

19
     A. David Bona
20   CARLSON CALLDINE  & PETERSON, LLP
     One Post Street
21   San Francisco, CA 82601
     Dbona@ccplaw.com
22

23

24

25
```

56

1   side of the creek from us, from the centermost.
2     Q.    Directly south.
3     A.    Yeah.  So she'd be directly south of
4   centermost.
5           (There was a brief discussion off the
6   record.)
7   BY MR. BARKER:
8     Q.    Okay.  So the photographs you just mentioned
9   were taken from her home?
10    A.    Back there, yes.
11    Q.    And starting with Photograph 24, can you
12  tell us what that shows?
13    A.    I -- that's showing -- again, I'd have to --
14  that's showing my place, the hay bales burning and
15  the fire that was just kind of behind the cottage at
16  centermost.
17    Q.    Okay.  And the next Photograph 26 -- excuse
18  me -- 25.
19    A.    25 is -- this is a photo I took.  Good
20  grief.  It's just incredible.  25 is showing the
21  Hutton home and another neighbor's home, the
22  Goldbergs, which would be just east of the Hutton
23  home and -- east and a little north.  It is showing
24  both the Hutton property and the Goldberg property.
25          MR. PAHLKE:  Could we use Hank's picture?

57

```
 1              MR. BONA:  May I suggest that we just
 2   display it on the screen on Zoom?  Then she can
 3   identify it on Zoom?  And then you can zoom in
 4   close, you can close zoom, do whatever we need.
 5              MR. BARKER:  We can.  Sure.
 6              Holly, are you able to bring that up?
 7              MS. COATES:  Sure.
 8              MR. BONA:  Sorry to make work for you,
 9   Holly.
10              MS. COATES:  Nope.  It's good.
11              THE WITNESS:  All right.  So this is a
12   picture I took with Ron, Janet's husband, when we
13   came back after I dropped off horses.  And how can
14   I -- how can we see -- what can I do so that you can
15   see?
16              MR. BAILEY:  Just is there any chance that
17   she can put a time on this picture?
18              THE WITNESS:  Oh, that's good.  Yeah, I can
19   time it.  I can get you that.
20              That is the Goldberg home, shop, that you
21   just circled, Holly.  And then to your left, or to
22   the west in geographical orientation, is the Hutton
23   property.  So if you can go down to your left on the
24   photo itself, not to the right, over there.  Yep.
25   Do you see the little structure?  Go up to your
```

58

1  right is some trees.
2       MS. COATES:  Up here?
3       THE WITNESS:  Yes, correct.  That's the
4  Hutton home.
5  BY MR. BARKER:
6     Q.    So for the record we drew a circle -- Holly
7  drew a circle around the Goldberg property; is that
8  correct?
9     A.    That's correct.
10    Q.    And that's accurately placed?
11    A.    That's accurately placed.
12    Q.    And then there is an X on the Hutton
13 property.  Is that accurately placed?
14    A.    Yes.
15    Q.    And you're going to show us from your phone?
16    A.    Timestamp.
17    Q.    The properties, yes.
18       MR. BARKER:  And you have that also, Holly?
19       MS. COATES:  I probably do.  I just have to
20 figure out which image it is.
21       MR. BARKER:  Don't worry about it.  I think
22 it's more efficient maybe for Pam to just look it up
23 on her phone.
24       THE WITNESS:  I have it.  It's 11:30 p.m.
25 BY MR. BARKER:

59

1   Q.   Okay.  And do your properties show the
2  orientation, then, to the north?  Is that some of
3  the data that's included there?
4   A.   It's not.  The location data isn't.  Sorry.
5  But it is looking to the northeast, primarily
6  northeast.
7   Q.   Okay.  For the sake of time and efficiency,
8  I'm going to go through the next photographs to make
9  sure that we identify those that are yours and those
10 that are Janet's.  Okay?
11  A.   Yes.
12  Q.   And so --
13       MS. COATES:  I'm sorry.  Did you want to
14 mark this annotated image as an exhibit?
15       MR. BARKER:  Thank you.  So what we will is
16 we will mark -- thank you, Holly.  We will mark this
17 as Exhibit 14.
18       (Exhibit 14 25A was marked for
19 identification.)
20       MR. BARKER:  And it is Photograph 25.  And
21 the annotation will be 25A.  Okay?  Thanks for
22 reminding me.
23       THE WITNESS:  Oh, boy.
24 BY MR. BARKER:
25  Q.   What are you looking at?

60

1    A.    I want to make sure that I'm correct in what
2 I'm -- where I am sitting.
3          Okay. I have to apologize. I'm wrong. I'm
4 actually sitting in the driveway of the Hutton home.
5 I need to take that all back.
6    Q.    Okay. That's okay. That's why we're here.
7 We'll get it right.
8    A.    So I'm -- this photo is right in front of
9 the Hutton home.
10   Q.    So we're looking at Exhibit 1, clear to the
11 right. And you're in the driveway looking --
12   A.    Uh-huh. And then I'm looking up at
13 Goldberg's. So that is still the Goldberg shop.
14 It's just that my perspective is not the road, but
15 actually in the -- at the driveway of Huttons.
16   Q.    Okay. What about the circle that we placed,
17 is that --
18   A.    The circle is correct. That is the Goldberg
19 shop.
20   Q.    So both annotations on Exhibit 14 25A are
21 accurate?
22         MR. PAHLKE: There's another annotation?
23         MR. BARKER: There was an X as well.
24         THE WITNESS: That is not -- okay, yeah.
25 BY MR. BARKER:

61

1   Q.      So it's just the circle?

2   A.      Yep.

3   Q.      Okay.  So that's -- it's correct as it is
4   presented now?

5   A.      Yes.

6           MR. PAHLKE:  Wait.  We have the X now.  We
7   have two annotations now.

8           THE WITNESS:  That X is just fire on some
9   trees.  That's not -- there's nothing -- no other
10  structure.  Does that make sense?

11          MR. BAILEY:  Now we have an X on the
12  Goldberg --

13          MR. BARKER:  We'll get it right here,
14  gentlemen.  Bear with me.

15          Holly, can we put a circle around where we
16  had the circle before?

17          MS. COATES:  Oh, sorry about that.

18          MR. BARKER:  That's okay.

19          THE WITNESS:  If I may point out something
20  else in the photo.

21          MR. BARKER:  Absolutely.

22          THE WITNESS:  The hot spot that we were
23  putting out with my neighbor's hose are just on the
24  other side of that corner fence, that corner rail
25  fence.  Just on the other side of that had a lot of

62

1   these fires, spot fires.
2   BY MR. BARKER:
3     Q.    Spot fires.  Okay.
4     A.    That's what we're going to call them now.
5   Okay.  Sure.
6           So they had started.  So we were putting
7   those out on the -- because they were getting really
8   close to Huttons.  They were coming towards Huttons
9   or whatever.  And however it was.  So we were
10  putting out fires over there.
11  BY MR. BARKER:
12    Q.    Now that we have an orientation correct --
13          MR. BAILEY:  Could we have her mark what she
14  says over there?
15          THE WITNESS:  Sure.  I'm so sorry.
16          MR. BARKER:  Could you direct Holly?  That's
17  okay.
18          THE WITNESS:  Okay.  Holly, right to your --
19  yeah, right to you -- you're real close.  Just go up
20  a little bit.  And that dark in that kind of -- how
21  do I say this?  Come back towards me a little bit.
22  Come back towards the fence.  Just on the other side
23  of that driveway that you can see is where those
24  fires were.  So you can't really --
25          MS. COATES:  Here?

```
                                                           63
 1            MR. BARKER:  Can you mark that with a
 2   different --
 3            THE WITNESS:  To your right a little bit.
 4   Yeah.  Kind of right in front of the yard there.
 5   Perfect.  Yeah, that would be -- that's right, it's
 6   right in there.
 7            MR. BARKER:  Let's put a square -- can you
 8   draw a square, Holly, the best that you can?
 9            MS. COATES:  Sure.
10   BY MR. BARKER:
11     Q.    Is that accurate?
12     A.    Yeah.  That would be accurate.  It was just
13   on the other side of the driveway.  He had a long
14   hose in the back of his truck.  He kept it there for
15   fires, actually.
16            MR. BARKER:  Hank, does that work for you?
17            MR. BAILEY:  Yes, thank you.
18            MR. BARKER:  You bet.
19   BY MR. BARKER:
20     Q.    Pam, so we have an orientation, the driveway
21   that you're speak of, that's a driveway to the
22   Hutton home?
23     A.    To the Hutton home.  And then it goes past
24   and up to the Goldberg home.
25     Q.    Okay.
```

```
                                                               64
 1              MR. BAILEY:  I'm sorry, Ken.  Could we have
 2    her draw a line on the driveway?  I think I know
 3    what it is.  I think it's just on the other side of
 4    the fence there.
 5              THE WITNESS:  Yes.  Correct.
 6              MR. BAILEY:  Yeah.  That's it?
 7              THE WITNESS:  That's it.
 8              MR. BAILEY:  Okay.
 9              THE WITNESS:  And it goes -- it continues to
10    the left on the picture up to the Goldbergs.  Yeah.
11    Correct.
12    BY MR. BARKER:
13       Q.   Okay.  And so the orientation of this
14    photograph, we're looking in what direction?
15       A.   I was -- that's northeast.
16       Q.   Okay.  And so just to summarize the
17    annotations on this photograph, to make sure that
18    we're all on board --
19              MR. BARKER:  And you guys are welcome to
20    join in here.
21    BY MR. BARKER:
22       Q.   Is the circle is on the Goldberg property?
23       A.   Correct.
24       Q.   The line is on the driveway to the Goldberg
25    property and the Hutton property?
```

65

1    A.    Correct.  The Hutton home.

2    Q.    The Hutton home.

3          And the square shows the areas of where the

4    spot fires were that you and others were trying to

5    put out with a hose?

6    A.    Some of them, yep.  Uh-huh.

7    Q.    Some of them.  Okay.  Great.

8          And that is marked again as 14, 25A.

9          Okay.  With that, Pam, we're going to go

10   through some photographs I want to make sure that

11   everybody participating in this case knows were

12   yours and what were contributed by Janet, okay?

13   A.    Uh-huh.

14   Q.    And I believe we already talked about the

15   three that you already mentioned.  The next one that

16   I have in my list is 28.

17   A.    Okay.

18         MR. PAHLKE:  Photograph 28 of?

19         MR. BARKER:  Of Exhibit 14.  Yes.

20   Photograph 28 of Exhibit 14.

21         THE WITNESS:  Janet took that picture.

22   BY MR. BARKER:

23   Q.    Okay.  And she sent this to you; is that

24   correct?

25   A.    Yes.