Scott E. Ortiz (WSB 5-2550)
WILLIAMS PORTER DAY NEVILLE PC
PO Box 10700
Casper, WY 82602
Telephone No.: (307) 265-0700
Facsimile No.: (307) 266-2306
Email: sortiz@wpdn.net

David Bona (CA SBN: 209605; TX SBN 24103639)
*Admitted Pro Hac Vice*
CARLSON, CALLADINE & PETERSON
One Post Street, Suite 500
San Francisco, CA 94104
Telephone No.: (415) 391-3911
Facsimile No.: (415) 391-3898
Email: dbona@ccplaw.com

*Attorneys for Defendant ASPLUNDH TREE EXPERT, LLC*

# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **WILLIAM JEROME RUTH,** individually, and As Wrongful Death Representative of the **ESTATE OF CYNTHIA SHOOK RUTH,**<br><br>Plaintiff,<br><br>v.<br><br>**BEARTOOTH ELECTRIC COOPERATIVE, INC.,** a Montana Corporation, and **ASPLUNDH TREE EXPERT, LLC,** a Pennsylvania Limited Liability Company,<br><br>Defendants. | Case No. 2:22-cv-00230-KHR<br><br><br>**MEMORANDUM IN SUPPORT OF DEFENDANT ASPLUNDH TREE EXPERT, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS** |

COMES NOW Defendant Asplundh Tree Expert, LLC ("Asplundh" or "Defendant"), by and through counsel of record, and submits the following Memorandum in Support of Defendant Asplundh Tree Expert, LLC's Motion for Partial Summary Judgment Re: Claim for Negligent Infliction of Emotional Distress pursuant to Federal Rule of Civil Procedure, Rule 56.

1

## I. INTRODUCTION

On November 15, 2021, a fire ignited in Clark, Park County, Wyoming. The fire, which became known as the "Clark Fire," resulted in one fatality, Cynthia Shook Ruth ("Cindy"); the wife of Plaintiff William Jerome Ruth ("Plaintiff"). On November 7, 2022, Plaintiff filed this action, alleging that the Clark Fire ignited as a result of a cottonwood tree (the "subject tree") contacting a powerline owned and maintained by Defendant Beartooth Electric Cooperative, Inc. ("BEC"). At the time the Clark Fire ignited, Asplundh contracted with BEC to provide vegetation management services on certain parts of BEC's electrical distribution system, including the area where the Clark Fire ignited.

Plaintiff's Complaint asserts three causes of action against Asplundh: (1) Wrongful Death; (2) Negligent Infliction of Emotional Distress; and (3) Nuisance. The present motion is directed solely at Count Two, Negligent Infliction of Emotional Distress because, as to this claim, there are no genuine issues of material fact in dispute, and Asplundh is entitled to judgment as a matter of law. Under Wyoming law, a plaintiff can recover damages for negligent infliction of emotional distress, only if they witnessed the infliction of serious bodily harm or death, or observed the serious bodily harm or death shortly after its occurrence, without any material change in the condition and location of the victim. *Gates v. Richardson,* 719 P.2d 193, 199 (Wyo. 1986). Here, Plaintiff did not observe his wife's death, nor did he see her body until later that morning, when he was at a neighbor's house and observed a body bag in the back of the coroner's vehicle. Therefore, the Plaintiff's claim for negligent infliction of emotional distress must be dismissed.

## II. UNDISPUTED MATERIAL FACTS

1. At the time of the Clark Fire, Plaintiff worked as a volunteer firefighter with the Clark County Fire Department. *See* Exhibit A (Transcript of Deposition of William Jerome Ruth, dated May 18, 2023), at 7:20-22.

2. On November 15, 2021, at approximately 10:30 pm, while in his home, Plaintiff saw a glow and flickering to the west of the house. Plaintiff then checked his phone and saw that

he had received an alert about a fire on Louis L'Amour Lane. Plaintiff informed Cindy that there was a fire and that he was going to respond to it. *Id.* at 12:2-23.

3. After leaving his home, Plaintiff drove to the "mailboxes," which are located at the intersection of County Road 1AB and Crossfire Trail. When Plaintiff arrived at this location, he was instructed by two-way radio to proceed to the fire station and get on one of the station's pickup trucks. Upon arriving at the fire station, Plaintiff put on his fire gear and then returned to the mailboxes at 1AB and Crossfire Trail in the station vehicle. After returning to the mailboxes, Plaintiff was assigned to assist in communications by relaying messages from the trucks and crews fighting the fire to the dispatch in located in Cody. *Id.* at 14:12-15:25; 17:3-10; 21:10-22.

4. At approximately 11:54 p.m., Plaintiff called Cindy and told her that she needed to evacuate the home immediately. Plaintiff made several other calls to Cindy during the early morning hours of November 16, 2021, but she did not answer her phone. The 11:54 p.m. call was the only time Plaintiff spoke with her that night. *Id.* at 44:5-21;45:21-47:1; *see also* Exhibit B (Plaintiff's Answers to Beartooth Electric Cooperative, Inc.'s First Set of Interrogatories and Requests for Production of Document to Plaintiff William Jerome Ruth) at p. 4.

5. At some point, after Plaintiff had talked to Cindy, while at his post at the mailbox location, Plaintiff spoke with Chief Nathan Hoffert. During this discussion, Hoffert told Plaintiff that Hoffert would go to Plaintiff's residence to assist Cindy in evacuating However, when Plaintiff saw Hoffert drive down Crossfire Trial, Hoffert did not go to the driveway of Plaintiff's home. *See* Exhibit A at 31:12-16; 44:9-11; 50:24-51:2; *see also* Exhibit B at pp.4-5.

6. Plaintiff later contacted a firefighter from another fire department who agreed to assist Plaintiff in searching for Cindy. The two drove in the firefighter's truck towards Plaintiff's home, where they found Cindy's car in the middle of the driveway approximately a half mile away from the house. *See* Exhibit A at 50:24-51:14; *see also* Exhibit B at p 5.

7. Cindy was not with the car, but the rear hatch was open, and Plaintiff's three dogs were in the back of the vehicle. Plaintiff and the firefighter secured the dogs in the firefighter's truck. They then proceeded on foot to the house, approximately a half mile away, calling and

searching for Cindy as they went, but they did not find her. *See* Exhibit A at 51:18-53:6; *see also* Exhibit B at p 5.

8. When Plaintiff reached his property, he went into the house and looked for Cindy while the firefighter checked another building on the property. They were not able to locate Cindy. Plaintiff and the firefighter then returned to where Cindy's car and the firefighter's truck were parked and then drove back to the mailboxes in the firefighter's truck. *See* Exhibit A at 53:21-54:20; 59:7-19; *see also* Exhibit B at p. 5.

9. Later that morning, Plaintiff met with a crew of three firefighters who took Plaintiff back to the location of Cindy's car. After arriving at the car, Plaintiff and the firefighters conducted a sweep of both sides of the driveway while moving towards the house on foot. Plaintiff and the firefighters checked the house and other surrounding buildings *See* Exhibit A at 59:13-61:20.

10. Plaintiff and the firefighters took a truck and a four-wheeler that had been left at the house and drove up the driveway to the location of Cindy's car. Plaintiff's truck could not navigate around Cindy's car and was left at this location, while Plaintiff and the firefighters returned to the mailboxes in the firefighters' truck and the four-wheeler. *Id.* at 61:20-62:16.

11. After returning to the mailboxes, Plaintiff was approached by a deputy sheriff, who showed Plaintiff a cell phone. Plaintiff identified the phone as belonging to Cindy. The deputy then told the Plaintiff that they had located Cindy's body. *See* Exhibit A at 64:15-66:5; *see also* Exhibit B at p. 6.

12. The sheriff's deputy did not allow Plaintiff to return to the area where Cindy's body was found. *See* Exhibit A at 66:11.

13. Plaintiff did not see Cindy's body at the location where she died. *Id.* at 66:12-17.

14. After being informed of Cindy's death, Plaintiff went to the house of his neighbors, Charles Jones and Kim Turiano. Later that morning, the coroner came to the Jones/Turiano residence to speak to Plaintiff. Plaintiff stepped outside the house and saw a body

bag that contained Cindy's body in the back of the coroner's hearse. *See* Exhibit A at 155:20-156:9; *see also* Exhibit B at p. 6.

### III. STANDARD ON SUMMARY JUDGMENT

Summary Judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Cor. v. Catrett,* 477 U.S. 317, 322-23 (1986). A fact is material if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Wright ex rel. Trust Co. of Kan. v. Abbott Labs, Inc.*, 259 F.3d 1226, 1231-1232 (10th Cir. 2001). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. *Alder v. Wal-Mart Stores*, 144 F.3d 664, 670 (10 Cir. 1998). In considering a motion for summary judgment, courts "must draw all reasonable inferences in favor of the nonmoving party" and may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150 (2000).

"The movant bears the initial burden of making a prima facie demonstration of the absence of genuine issue of material fact and entitlement to judgment as a matter of law." *Alder*, 144 F.3d at 670-671. Once this initial burden is met, "the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* at 671.

### IV. ARGUMENT

Count Two in Plaintiff's Complaint seeks damages for negligent infliction of emotional distress. The Wyoming Supreme Court first recognized the tort of negligent infliction of emotional distress in *Gates v. Richardson*, 719 P.2d 193, 194-198 (Wyo. 1986). In doing so, the Wyoming Supreme Court established certain restrictions and limitations on when a Plaintiff may recover damages under such a cause of action. *Id.* at 198-201. In *Gates,* the Wyoming Supreme Court in explaining the basis for a claim for negligent infliction of emotional distress, stated:

> The essence of the tort is the shock caused by the perception of an especially horrendous event. [Citation]. It is more than the shock one suffers when he learns of the death of or injury of a child, sibling or parent over the phone, from a

5

>witness, or the hospital. It is more than bad news. The kind of shock the tort requires is the result of the immediate aftermath of an accident.

*Gates,* 719 P.2d at 199. The *Gates* court set out four elements that must be met for a negligent infliction of emotional distress claim: (1) the plaintiff must be within the class of plaintiffs who could bring, at least under some set of circumstances, a wrongful death action, for the primary victim's death; (2) the primary victim must die, or suffer serious bodily injury as the term is defined in the Wyoming Criminal Code; (3) the plaintiff must observe either the infliction of the fatal or harmful blow or observe the results of the blow after its occurrence without material change in the condition and location of the victim; and (4) the defendant must have been negligent, and its negligence must be the proximate cause of the plaintiff's mental injuries. *Id.* at 200-201.

Defendant does not dispute that the first two elements of a claim for negligent infliction of emotional distress are met in this case. Even assuming, solely for purposes of this motion, that Plaintiff can establish the fourth element, that Defendants' negligence was the proximate cause of Clark Fire and Cindy's death, his claim still fails because Plaintiff cannot meet the third element of the *Gates* test since he did not witness Cindy's death or observe her body shortly after she died in the location where her body was found.

The Court has recognized that shock and emotional distress can and does occur outside of the immediate aftermath of an accident, but has noted that while operation of the rule may be hash, distress that occurs outside that initial point is not compensable. *Contreras,* 843 P.2d at 593; *See also Roitz v. Kidman*, 913 P.2d 437, 433. While some time is permitted to pass between the time of injury or death and a plaintiff's observation, "[o]nce the victim's condition or location has materially changed, however, the moment of crisis for which recovery is allowed is deemed to have passed, regardless of the brevity of time which has elapsed since the accident." *Contreras By and Through Contreras v. Carbon County School District #1*, 843 P.2d 589, 593 (Wyo. 1992).

It is undisputed that Plaintiff did not observe Cindy's death nor did Plaintiff observe her body before a material change in her condition and location occurred. *See* Exhibit A at 64:15-66:17; 155:20-156:9; *see also* Exhibit B at p. 6. When Cindy's body was found, Plaintiff was kept away from the location. *See* Exhibit A at 66:11. Rather than allow Plaintiff to observe the body, Plaintiff was asked only to identify Cindy's cell phone. *See* Exhibit A at 64:15-66:5; *see also* Exhibit B at p. 6. The first time Plaintiff observed Cindy's body was later when the coroner met Plaintiff at his neighbor's home. *See* Exhibit A at 155:20-156:9; *see also* Exhibit B at p. 6. By that time, Cindy's body had been placed in a body bag for transport, a material change in both the condition and the location. *Id.*

The immediacy rule adopted by the Wyoming Supreme Court is a strict one, particularly when a change in location and condition has occurred. In *Contreras*, the Court held that a mother could not recover emotional distress damages for a personal injury suffered by her son at school, where she first observed him after he was moved from the location where the injury happened and was taken to the principal's office. *Contreras,* 843 P.2d at 594. Similarly, in *Thunder Hawk v. Union Pacific Railroad Company,* 844 P.2 1045, 1052 (Wyo. 1992), the Court held that the parents of a six year-old child who lost his leg in a train accident could not maintain a claim for negligent infliction of emotional distress because they did not see their son until after he was transported to the hospital.

Additionally, the Court has held that contemporaneous knowledge that an injury ultimately resulting in death occurred is not sufficient to satisfy the immediacy element of a negligent infliction of emotional distress claim. In *Hendricks v. Hurley* 184 P.3d 680, 681 (Wyo. 2008)*,* a mother brought a claim for negligent infliction of emotional distress when her 8 year-old son died after suffering an accidental electrocution. The mother argued that even though she was not physically present when her son suffered the injury, she qualified as a witness because her husband called from the scene and described the efforts of emergency personnel to save their son. *Id.* at 685. The Court did not accept this argument, and reiterated that under *Gates* observation of the infliction of serious bodily harm or death, or its immediate aftermath without

material change in the condition and location of the victim is a required element of the claim. *Id.* at 686.

Here, although Plaintiff was involved in the search for Cindy, and while he may have had contemporaneous knowledge that Cindy could have suffered serious injury or death as the search continued through the night, that knowledge is not sufficient to give support a claim for emotional distress damages under Wyoming law as it is undisputed that Plaintiff did not observe the infliction of Cindy's injuries or the immediate aftermath without material change in her condition and location.

## V. CONCLUSION

Plaintiff cannot establish one of the required elements of a claim for negligent infliction of emotional distress under Wyoming law. For that reason, Defendant Asplundh Tree Expert, LLC, respectfully requests that the Court enter partial summary judgment dismissing Count Two of the Complaint.

Dated this 25th day of October, 2023.

By:    /s/ David Bona
David Bona (CA SBN: 209605; TX SBN 24103639)
*Admitted Pro Hac Vice*
CARLSON, CALLADINE & PETERSON
One Post Street, Suite 500
San Francisco, CA  94104
Telephone: (415) 391-3911
Email: dbona@ccplaw.com

Scott E. Ortiz (WSB 5-2550)
WILLIAMS PORTER DAY NEVILLE PC
PO Box 10700
Casper, WY 82602
Telephone No.: (307) 265-0700
Facsimile No.:  (307) 266-2306
Email: sortiz@wpdn.net

*Attorneys for ASPLUNDH TREE EXPERT, LLC*