Kenneth E. Barker (WY Bar No. 6-3040)
BARKER LAW FIRM, LLC
10956 SD Highway 34
PO Box 100
Belle Fourche, SD 57717
Telephone: (605) 723-8000
kbarker@barkerlawfirm.com

Ian K. Sandefer (WY Bar No. 6-4334)
SANDEFER & WOOLSEY, TRIAL LAWYERS, LLC
143 N. Park Street
Casper, WY 82601
Telephone: (307) 232-1977
ian@swtriallawyers.com

Robert G. Pahlke (NSBA No. 13201)
THE ROBERT PAHLKE LAW GROUP
Admitted Pro Hac Vice
2425 Circle Drive, Suite 200
Scottsbluff, NE 69361
Telephone: (308) 633–4444
rgp@pahlkelawgroup.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF WYOMING

| | |
|---|---|
| **WILLIAM JEROME RUTH,** individually, and as Wrongful Death Representative of the **ESTATE OF CYNTHIA SHOOK RUTH,**<br><br>Plaintiff,<br><br>v.<br><br>**BEARTOOTH ELECTRIC COOPERATIVE, INC.,** a Montana Corporation, and **ASPLUNDH TREE EXPERT, LLC,** a Pennsylvania Limited Liability Company,<br><br>Defendants. | **Case No. 22-CV-00230-KHR**<br><br>**PLAINTIFF'S RESPONSE TO DEFENDANT ASPLUNDH TREE EXPERT, LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT RE: CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS [ECF Doc. No. 38] AND MEMORANDUM IN SUPPORT THEREOF [ECF Doc. No. 39]** |

**COMES NOW** the Plaintiff, William Jerome "Jerry" Ruth (hereinafter "Jerry"), on behalf of the Estate of Cynthia "Cindy" Shook Ruth (hereinafter "Cindy"), by and through his

1

undersigned attorneys, and submits the following response in opposition to Defendant Asplundh Tree Expert, LLC's (hereinafter "Asplundh" or "Defendant Asplundh") *Motion for Partial Summary Judgment* concerning Plaintiff's claim for negligent infliction of emotional distress.

> **"A foolish consistency is the hobgoblin of little minds, adored by little statesmen and philosophers and divines. With consistency a great soul has simply nothing to do."** – Ralph Waldo Emerson, "Self-Reliance," *Essays*, First Series, 1841.

## I. Introduction

Defendant Asplundh moves the Court to dismiss Plaintiff Jerry Ruth's negligent infliction of emotional distress claim. At first impression, Asplundh appears to make a persuasive argument based on Wyoming precedent. Nevertheless, Plaintiff urges the Court to consider the facts of this case and how the Wyoming Supreme Court would likely rule if confronted with this precise issue. Asplundh's motion is based exclusively on the fact that the coroner placed the severely burned and contorted body of Jerry's wife of thirty-eight (38) years in a body bag and drove her to him up the road, rather than him finding her on his search for her in the field near their home. In this case, Jerry was present at the scene of Cindy's demise, he confirmed that she had in fact perished in the fire by identifying her cell phone, and he was not permitted to view her body before it was moved. Jerry was part of the Clark Volunteer Fire Department's efforts to protect against the results of Asplundh's negligence—negligence that ultimately took Cindy's life. As such, he was present, involved and integrally intertwined with the fire and scene that took his wife's life. Jerry intimately knew the risks the raging fire presented as he and other volunteers risked great danger in trying to save the lives of families in the community.

Plaintiff contends that under the facts and circumstances of this particular case, *the policy factors* underpinning *Gates v. Richardson*, 719 P.2d 193 (Wyo. 1986) are met and a jury should be entitled to determine the extent of Jerry's mental suffering, if any. The Wyoming Supreme

2

Court has not been hesitant to revisit the scope of the negligent infliction of emotional distress causes of action in the state when the facts warrant it. Here, Plaintiff believes the facts warrant just such a reconsideration.

## II.     Undisputed Facts upon which Defendants Rely

Plaintiff does not necessarily dispute the facts to which Asplundh cites in support of its motion. *See* ECF Doc. No. 39 at 2-5. However, in law as in life, the devil is usually in the details. Plaintiff intends to expand upon the facts and emphasize facts that Asplundh provides short shrift to or ignores altogether.

## III.    Statement of Additional Material Facts Relevant to Negligent Infliction of Emotional Distress

A.     Jerry and Cindy were married for thirty-eight (38) years at the time Cindy died in the fire. *See* ECF Doc. No. 39-1 at 7.

B.     Jerry describes the scene of the fire as "a nightmare" and "very chaotic." *See* **Exhibit 1** (Jerry Ruth Depo.) at 148:24-149-7. There were three fire companies out responding to the fire and there was poor communication when trying to fight the fire. *See id*.

C.     Clark Volunteer Fire Department Chief Nate Hoffert told Jerry that he was going to go get Cindy out of their home. However, Chief Hoffert made the real-time decision to evacuate the neighbors because he believed they were in peril. *See id*. at 33:5-16; 149:6-150:25. *See also* ECF Doc. No. 39-1 at 31:12-16; 44:9-11; 50:24-51:2; and ECF Doc. No. 39-2 at 4-5.

D.     After Jerry returned to the mailboxes from his second search for his wife, he made contact with a sheriff's deputy and informed him that he intended to go back down to continue searching for Cindy. It is at this time that the deputy told Jerry "that they may have located Cindy." *See* **Exhibit 1** at 63:22-25.

E.     Jerry was not permitted to go down to the field to see Cindy's body as it lay, despite

knowing that her lifeless body was just down the road. *See id*. at 63:22-64:2; *see also* ECF Doc. No. 39-1 at 155:13-19.

F.    While Asplundh briefly discusses Jerry's testimony regarding when he first saw Cindy after she perished in the fire, the impact can only really be seen by a review of Jerry's live deposition testimony. While Jerry's answer takes up a mere two-and-one-half pages of the deposition transcript, it takes Jerry approximately seven minutes to answer the question because of the emotional impact it still has on him. *See id*. at 155:13-157:14; *see also* **Exhibit 2** (video recording of this portion of the deposition filed conventionally with the Clerk per CM/ECF Procedures Manual Section II(D)(vi) and served upon opposing counsel electronically). The deposition occurred roughly a year-and-a-half after Cindy's death.

G.    Jerry testified regarding the mental health care he required, and still requires, after Cindy's death. *See* **Exhibit 1** at 35:6-39:21.

## IV.    Law and Argument

### a.    *Summary Judgment Standard*

As Plaintiff previously cited in *Plaintiff's Brief in Support of Motion for Summary Judgment on "Act of God" Affirmative Defense and Partial Summary Judgment (Liability)*, *see* ECF Doc. No. 37 at 12-13, this Court recently outlined the applicable law on summary judgment in *Jones v. Mountainside Apartments, L.P.*, 2022 U.S. Dist. LEXIS 109031, *3-5 (D. Wyo. May 23, 2022), which is as follows:

> Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it would affect the outcome of the case. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

> The movant bears the initial burden to either affirmatively disprove an essential element of the non-movant's case or to demonstrate the non-movant lacks evidence to support the claim at trial, "since a complete failure of proof concerning an essential element" renders all other facts immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). To meet this initial burden, the movant must inform the court "of the basis for its motion, and identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323 (quoting Fed. R. Civ. P. 56(c)(1)). If the movant bears this initial burden, the non-movant "must respond with specific facts showing the existence of a genuine factual issue to be tried." *Coleman v. Darden*, 595 F.2d 533, 536 (10th Cir. 1979).
>
> When reviewing a motion for summary judgment, the court's role is not to weigh the evidence, but rather to assess the threshold consideration of whether a genuine issue of material fact exists. *Liberty Lobby*, 477 U.S. at 249-50. All reasonable inferences must be resolved in the light most favorable to the non-moving party. *Id.* at 255. This inquiry is also guided by applicable evidentiary standards. *Id.*

"[S]ummary judgment is a drastic remedy that is appropriate only if there exists no genuine issue of material facts." *See Cinker, Inc v. Northern Gas Co.*, 578 Supp. 112, 114 (D. Wyo. 1983) (citing *Luckett v. Bethlehem Steel Co.*, 618 F.2d 1373, 1383 (10th Cir. 1980). *See also Grose v. Sauvageau*, 942 P.2d 398, 402 (Wyo. 1997) ("Summary judgment is a drastic remedy, and therefore, if the evidence is subject to conflicting interpretations, or reasonable minds might differ as to its significance, summary judgment is improper.").

"A federal Court sitting in diversity must ascertain and apply state law to reach the result the Wyoming Supreme Court would reach if faced with the same question." *Cooperman v. David*, 214 F.3d 1162, 1164 (10th Cir. 2000).

b. *Relevant Wyoming Law*

i.     Negligent Infliction of Emotional Distress

Preliminarily, in Wyoming, "[s]ummary judgment is not favored in a negligence action and is, therefore, subject to more exacting scrutiny.  We have, however, affirmed summary judgment in negligence cases where the record failed to establish the existence of a genuine issue of material fact." *Cook v. Shoshone First Bank*, 2006 WY 13, ¶ 12, 126 P.3d 886, 889 (Wyo. 2006) (citing *Jones v. Schabron*, 2005 WY 65 ¶¶ 9-11, 113 P.3d 34, 37 (Wyo. 2005). *See also Bogdanski v. Budzik*, 2018 WY 7, 408 P.3d 1156, 1161 (Wyo. 2018) (citing *Johnson v. Dale C.*, 2015 WY 42, 345 P.3d 883, 886-87 (Wyo. 2015)).

As Asplundh correctly points out, the Wyoming Supreme Court first recognized negligent infliction of emotional distress as a cause of action in Wyoming thirty-seven (37) years ago in *Gates v. Richardson*, 719 P.2d 193 (1986).  *See* ECF Doc. No. 39 at 5.  In *Gates*, the Court noted as follows: "It may be the crushed body, the bleeding, the cries of pain, and, in some cases, the dying words which are really a continuation of the event.  The immediate aftermath may be more shocking than the actual impact." *Gates*, 719 P.2d at 199.  Asplundh also correctly articulates the *Gates* Court's holding, including the requirement that "plaintiff must observe either the infliction of the fatal or harmful blow or observe the results of the blow after its occurrence without material change in the condition and location of the victim." *See* ECF Doc. No. 39 at 6.  *See also Gates*, 719 P.2d at 201.

In determining, some thirty-seven (37) years ago, that a claim for negligent infliction of emotional distress in Wyoming should be permitted, the Wyoming Supreme Court relied on the "key policy factors" outlined in *Tarasoff v. Regents of University of California*, 551 P.2d 334, 342 (Cal. 1976). *See Gates*, 719 P.2d at 196.  Those factors are as follows:

> (1) the foreseeability of harm to the plaintiff, (2) the closeness of the connection between the defendant's conduct and the injury suffered, (3) the degree of certainty that the plaintiff suffered injury, (4) the moral blame attached to the defendant's conduct, (5) the policy of preventing future harm, (6) the extent of the burden upon the defendant, (7) the consequences to the community and the court system, and (8) the availability, cost and prevalence of insurance for the risk involved.

*See id*. Further, the Court followed the bright-line limitation imposed by the state of Massachusetts that the plaintiff "'either witnesses the accident or soon comes on the scene while the [victim] is still there.'" *See id*. at 199 (citing *Dziokonski v. Babineau*, 375 Mass. 555, 380 N.E.2d 1295, 1302 (Mass. 1978)).

Despite its ruling in *Gates*, the Wyoming Supreme Court has been willing to expand the tort of negligent infliction of emotional distress in circumstances likely to produce emotional distress and when the old rule is outdated; specifically:

> **We have previously shown that we are willing, in very limited circumstances, to overrule what was the common law at the time it was handed down but which has now become outdated.** *Nulle v. Gillette-Campbell County Joint Powers Fire Bd*., 797 P.2d 1171, 1172-73 (Wyo. 1990). However, like the Minnesota Supreme Court, we are not eager to expand the availability of damages for emotional distress. We continue to be concerned about the ramifications of expansion for the same reasons cited above. Nevertheless, our reluctance cannot result in the application of a rule that was not meant to govern this type of situation. Our primary concern is the burden overbroad liability for emotional damages would impose on our court system. See *Gates*, 719 P.2d at 197. Therefore, **the availability of such damages must be limited to plaintiffs who can prove that emotional injury occurred under circumstances tending to guarantee its authenticity**. *Lickteig,* 556 N.W.2d at 560.

*See Larsen v. Banner Health Sys.*, 81 P.3d 196, 202 (Wyo. 2003) (bold emphasis added). The *Larsen* case involved the switching of babies at a hospital at birth, which was only discovered forty-three years later. *See id*. at 198.

Furthermore, in 1995 the Wyoming Supreme Court expanded the availability of purely emotional damages in negligence cases involving car crashes. *See Daily v. Bone*, 906 P.2d 1039 (Wyo. 1995); *see also Blagrove v. JB Mech., Inc.*, 934 P2d 1273, 1275 (Wyo. 1997). The Court explained in *Blagrove* that the expansion of purely mental injuries in *Daily* "resulted from the particular facts involved . . . ." *See Blagrove*, 934 P.2d at 1276.

c. <u>Argument</u>

i. <u>The *Gates* Factors Weigh in Favor of Permitting the Jury to Consider Plaintiff's Negligent Infliction of Emotional Distress Claim</u>

Here, considering the factors as they apply to Plaintiff's factual circumstances favor permitting a jury to consider whether Jerry suffered emotional distress as a result of Asplundh's negligent actions and inactions.

First, when a company fails to trim a tree limb too close to a power line, resulting in a fire that kills someone's wife, it is highly foreseeable that the husband will suffer emotional injury when viewing the body bag outlining the contorted body contained therein. In this case, Jerry was part of the firefighting effort and, thus, was intricately involved in the events that ultimately took his wife of thirty-eight (38) year's life. He was involved in searching for her on the scene while the fire was on-going. In fact, Jerry's house was on fire while he was searching for Cindy and he had to put it out. *See* ECF Doc. No. 39-1 at 53:19-54:9. Finally, when he was informed that his wife was likely found and he identified her phone, he was prohibited from seeing her as she lay in the field near their house. Nevertheless, a short time after Cindy was found, the coroner brought her body to Jerry, still in the vicinity of the fire and tragedy, and gave Jerry her anniversary ring. *See* **Exhibit 1** at 156:1-5. Jerry's wife—who he had left only hours earlier to fight the fire that Asplundh's negligence caused—was now in a body bag and he could see "the form of her body was all contorted." *See id*. Foreseeability of emotional injury is not reasonably in issue.

8

Second, the connection between Asplundh's failure to trim the subject tree, Cindy's death, and Jerry's emotional distress is as close as one can imagine. Furthermore, as was the case in *Daily*, Jerry was not simply a bystander who came upon the death causing event after-the-fact, he was saving the lives of others and intimately involved in the traumatic event that took his wife's life. This weighs in favor of permitting the cause of action to go forward.

Third, it is clear that Jerry suffered an emotional injury. There is little to no doubt that anyone presented with the circumstances that Jerry was presented with would suffer substantial mental distress and suffering.

Fourth, Asplundh's conduct is rife with moral blame. As the *Larsen* Court discussed,

> Moral blame generally results from situations in which the defendant had direct control over establishing and ensuring proper procedures to avoid the harm caused or where the defendant is the party best in the position to prevent the injury.

*See Larsen*, 81 P.3d at 205 (citing *Duncan v. Afton*, 991 P.2d 739, 745 (Wyo. 1999)). Asplundh had direct control over the policies and procedures to identify and remedy trees and branches that posed a risk of creating a fire because of their position relative to a live power line. Furthermore, as a company that identifies themselves as "tree experts," and the company contracted to perform vegetation management on Line Creek, Asplundh was surely in the best position to prevent the injury. In fact, Cindy and Jerry were helpless victims relying solely on Asplundh and Beartooth's competence and integrity to protect against the risk of fires starting from tree branches contacting power lines.

Fifth and sixth, with respect to preventing future harm and burdening the defendant, these factors weigh strongly in favor of permitting Plaintiff's negligent infliction of emotional distress cause of action to proceed. The necessity of preventing future tragedies of this type is paramount and the ability to do so is solely in Defendants' hands. The Jerry and Cindy Ruths of the world

9

are powerless to prevent such fires, except by using the civil justice system to hold tortfeasors accountable for the full extent of the loss suffered. Additionally, as the Wyoming Supreme Court has recognized, "[a]ny time a defendant must pay for his wrongs he is burdened." *See Gates*, 719 P.2d at 197. From a public policy perspective, the choice then becomes who should bear the burden: should the loss "fall on the innocent victim rather than the guilty tortfeasor, his insurer, and the public"? *See id*. Public policy weighs in favor of holding the negligent party responsible, as was found in *Gates*, *Daily*, and *Larsen*.

Seventh, the Court considers the burden that permitting recovery for an emotional injury in factual situations similar to Jerry's will have on the community and court system. Permitting recovery here poses little risk of imposing a great burden on our court system, as concerned the *Gates* Court. *See Gates*, 719 P.2d at 197. Most of these types of claims, especially in wrongful death cases, will be brought in conjunction with other causes of action, just as was done here. This means that any additional burden on the court system would be *de minimis*. Additionally, requiring claimants to be intimately involved in the events that ultimately lead to the death of their loved one, as was Jerry, will further limit the number of cases that will be cognizable. It is worth repeating the *Gates* Court's admonition with respect to this factor:

> [I]f the only purpose of our law is to unburden the court system, then we would reach the zenith of judicial achievement simply by closing the district courts to all litigants and allowing all wrongs to come to rest on innocent victims. In the state of Wyoming, the constitution guarantees that
>
>> 'all courts shall be open and every person for an injury done to person, reputation or property shall have justice administered without sale, denial or delay.' Wyoming Constitution, Art. 1, § 8.

*See id*. at 197-98.

The eighth and final consideration is "the availability, cost and prevalence of insurance for the risk involved." There is readily available and prevalent insurance coverage for the type of losses suffered here.

Because all of the *Gates*' factors weigh in favor of permitting the cause of action to proceed, Plaintiff requests that the Court deny Asplundh's *Motion for Partial Summary Judgment*.

ii. <u>The Cases Defendant Relies on are Distinguishable</u>

Defendant Asplundh relies upon a number of cases in which the Wyoming Supreme Court affirmed the dismissal of negligent infliction of emotional distress claims based upon a material change in the victim's condition and/or location. In none of these cases were the claimants inextricably intertwined and present at the very event that caused the serious injury or death of their close family member.

Asplundh relies upon *Contreras v. Carbon County Sch. Dist. #1*, 843 P.2d 589 (Wyo. 1992). *See* ECF Doc. No. 39 at 6-7. In *Contreras*, a young boy was hurt in a schoolyard playground accident. *See Contreras*, 843 P.2d at 591. The school secretary called the boy's mother, who drove to the school and saw her son injured and crying in the office. *See id*. The mother was completely separate and removed from the events that caused her son injury on the playground.

Similarly, Asplundh relies upon *Thunder Hawk v. Union Pac. R.R.*, 844 P.2d 1045 (Wyo. 1992). *See* ECF Doc. No. 39 at 7. In *Thunder Hawk*, a six-year-old was playing with friends at a rail yard and suffered a below the knee amputation when "[h]is left leg landed in the path of the train . . . ." *See Thunder Hawk*, 844 P.2d at 1046. The parents were completely removed from the negligent underlying events and were not present on the scene. They were notified of their son's injuries at their places of employment and first saw him at the hospital. *See id*. at 1052.

Additionally, Asplundh cites to, but does not discuss, *Roitz v. Kidman*, 913 P.2d 437 (Wyo. 1996). *See* ECF Doc. No. 39 at 6. *Roitz* involved a speeding driver who hit a number of cattle on a county road. *See Roitz*, 913 P.2d at 432. A passenger was thrown from the vehicle and later transported to the hospital. *See id*. His parents were notified of the crash and went to the hospital. *See id*. Again, the parents were completely detached from the injury causing negligence.

The final case to which Asplundh cites in support of its request to dismiss Plaintiff's negligent infliction of emotional distress claim is *Hendricks v. Hurley,* 184 P.3d 680 (Wyo. 2008). *See* ECF Doc. No. 39 at 7-8. *Hendricks* involved an eight-year-old child who was electrocuted when he touched an energized wellhead while attempting to get a drink from a hydrant. *See Hendricks,* 184 P.3d at 681. He was playing with his friends and his parents were not present. *See id*. at 861, 865. Again, the first time the boy's mother saw him was when he had been transported to the emergency room. *See id*. at 865-66. There is no evidence that the young boy's mother was present and intimately involved in the very events that caused her son to lose his life.

Perhaps a hypothetical example will help illustrate why it matters when the person claiming emotional injury is present and inextricably involved in the distressing events. Imagine a husband and wife aboard the Titanic. The captain negligently careens the ship into an iceberg and it begins to take on water. The husband attempts to save others' lives by helping women and children board the lifeboats. The husband searches for but is unable to find his wife. He somehow makes it off the Titanic and aboard the RMS Carpathia moments before the Titanic goes under. Unfortunately, his beloved wife does not make it onto a lifeboat and she succumbs to hypothermia in the frigid waters. The husband never sees his wife in the water, but does see her shawl floating in the water near the Carpathia. Distraught and certain that his wife has perished, the husband aimlessly wanders the ship's deck. Unbeknownst to him, the Carpathia crew had been recovering victims'

lifeless bodies from the water and placing them on the deck near the ship's bow. As the husband shuffles along, he sees his wife's lifeless and frozen body lying on the deck.

The question is this: is it less likely that the husband will suffer an emotional injury during this traumatic event—one that he was intimately involved in and which the negligent ship captain caused—because he first saw his wife's body on the ship's deck rather than floating in the water? Under these circumstances, does the modest change in his wife's physical location vitiate the husband's mental suffering? Should the Titanic's owners evade the full measure of damages its employee's negligence caused the husband under these circumstances?

There is a qualitative difference when the claimant is present at the scene of the tragic events as they unfold; when the claimant is intimately involved in the events that a tortfeasor's negligence caused; and when the claimant is suffering from the same stress of the events that ultimately took the life of their close family member. These are circumstances tending to guarantee the authenticity of an emotional injury. *See Larsen*, 81 P.3d at 202 (citing *Lickteig,* 556 N.W.2d at 560). Accordingly, there ought to be a different result under these facts and circumstances.

### Conclusion And Remedy

For the reasons stated above, Plaintiff respectfully requests that the Court deny Defendant Asplundh's *Motion for Partial Summary Judgment* and permit the jury to consider Plaintiff's negligent infliction of emotional distress claim.

**DATED** and SIGNED this 8th day of November, 2023.

SANDEFER & WOOLSEY, TRIAL LAWYERS, LLC

/s/ Ian Sandefer
_____
Ian Sandefer
Attorney for Jerry Ruth
143 N. Park Street

13

        Casper, WY 82601
        (307) 232-1977
        ian@swtriallawyers.com

        **BARKER LAW FIRM, LLC**
        Kenneth E. Barker
        Attorney for Jerry Ruth
        10956 SD Highway 34
        PO Box 100
        Belle Fourche, SD 57717-0100
        kbarker@barkerlawfirm.com
        Tel: (605) 723-8000
        Fax: (605) 723-8010

        **ROBERT PAHLKE LAW GROUP**
        Robert G. Pahlke
        Attorney for Jerry Ruth
        2425 Circle Drive, Suite 200
        Scottsbluff, NE 69361-1224
        (308) 633-4444
        rgp@pahlkelawgroup.com

## CERTIFICATE OF SERVICE

      This is to certify that on the 8<u>th</u> day of November, 2023, the undersigned served the within and foregoing *Plaintiff's Response to Defendant Asplundh Tree Expert, LLC's Motion for Partial Summary Judgment Re: Claim for Negligent Infliction of Emotional Distress [ECF Doc. No. 38] and Memorandum in Support Thereof [ECF Doc. No. 39]* upon counsel by electronic service via CM/ECF to:

Henry F. Bailey, Jr.
Andrew D. Bailey
Bailey Stock Harmon Cottam Lopez
6234 Yellowstone Road
PO Box 1557
Cheyenne, WY 82003
Email: hank@performance-law.com
Email: andy@performance-law.com

Scott E. Ortiz
Williams Porter Day & Neville PC
PO Box 10700
Casper, WY 82601
Email: sortiz@wpdn.net

A. David Bona
Matthew S. Sepuya
Colin C. Munro
Carlson, Calldine & Peterson, LLP
One Post Street, Suite 500
San Francisco, CA 94104
Email: dbona@ccplaw.com

/s/ Ian K. Sandefer

Ian K. Sandefer